Case of the Day and of the Week is No. 23-10811, Clemente Javier Aguirre-Jarquin v. Robert Hemmert et al. Whenever you're ready. Good morning, Your Honors, Counsel, and may it please the Court, my name is Tom Poulton. I am here on behalf of the defendants below in this Qualified Immunity Appeal on behalf of Defendants Burks, Hemmert, and Grossian on behalf of the Sheriff and the Cross Appeal. I have with me Mr. Brian Mose, who's co-counsel in the case. I'd like to start, if I may, with describing who did what in this investigation. Defendant Hemmert is a sworn deputy, he's the lead investigator. You have a very limited amount of time and there's a ton going on in this case, so I think you should both presume that we've read a lot in this case and have a general idea of what happened and what individuals are accused of and all of that. That doesn't mean you can't speak to those things, but I don't think we need a full recitation of the factual background. That said, if you want to do that, it's your time. I'll jump right into the issues related to Defendant Burks, the fingerprint examiner. The most important issue, most important point we would like the court to recognize here is that fingerprint examination, or in this case palm print, is not an exact science. It's not objective. It is a subjective impression. There are five people who looked at the print issue in this case, including Ms. Burks. What claim are you speaking to? This is the inadequate investigation and the falsification claim. Federal case, Supreme Court of Appeals for that matter, that recognizes a constitutional claim as a result of an inadequate investigation. Of course, but it must be a constitutionally inadequate investigation. How would an investigation be constitutionally inadequate and give rise to a cause of action? It's only if the constitutionally inadequate investigation causes a defect down the road, for example, in the probable cause analysis. Oh, then what you should be talking about is whether there was probable cause to arrest him. Yes, Your Honor. I think it's a friendly question to you. It is. Because you're representing one of the defendants in the case, Ms. Burks. When we get down the line about whether the palm print matters or not, Your Honor is reading my mind. And that is that my final point on that, and I'll skip to it, is that if you remove the palm print identification altogether from the equation here, the question is, is there still probable cause or arguable probable cause? Let me ask you a not-so-friendly question. Okay. It seems to me that part, though not all, of your argument for her is based on sufficiency of the evidence type stuff. And we've said numerous times, the last time in an opinion by our Chief Judge, that if you are challenging in an interlocutory qualified immunity appeal, the district court's view of what the evidence showed at summary judgment or could show, we don't have appellate jurisdiction over that issue. So help me with that and tell me why we can consider your sufficiency arguments about the evidence. Because the sufficiency issue arises in a context of what kind of analysis this is. This is not an objective analysis where you can say Ms. Burks got it wrong or she got it right. No, no, no, no, no, no. I understand the legal part of that argument. I think the legal part of that argument is here properly before us. But when the district court finds that there is evidence for a jury to conclude that she fabricated evidence, no matter how right or wrong that is, I don't think you can challenge that in an interlocutory qualified immunity appeal. That's a sufficiency of the evidence type stuff. The Supreme Court's decision in Jones says that. Our cases post-Jones say that. Let me direct to the part of the order that discusses this fabrication issue inferred from alleged misconduct in other instances by Ms. Burks. You also can't challenge that stuff. You can't challenge evidentiary rulings. If not, this qualified immunity appeal becomes a full-blown appeal from a summary judgment order. We lean all the facts, lean them all in favor of the non-movement, so we have no fact issue involved. Do you understand? And you take facts all leaned over in favor of the plaintiff, as it were, and then decide whether that violates the Constitution. I understand, Your Honor, but... What's their best case against Burks? Their best case against Burks is that she was wrong when she determined that there were seven points of minutia in the palm print to be able to make a comparison. That's their fundamental case. Do you have a case that she intended to be wrong or anything of that sort? Just plain negligent. Negligent. Correct, Your Honor. And that's why, to address Judge Shorten's question on the factual sufficiency, the rule is also, however, that there's only a genuine issue of material fact to the extent it is supported by the record. So for example, when the district court says, well, I see all of these other defects in other examinations, that's fine, but the question then is, does that legally translate to be able to say that she made a mistake in this case that rises to that level? You may be completely right about that, but that's not reviewable here. I think as Judge Choflat explained, we take the district court's view of the record and rule from that view of the record in the light most favorable to the plaintiff whether or not there was a violation of the Constitution, and if so, whether or not the law was clearly established. I'm not saying reject the factual finding of the district court. I'm saying that those factual findings do not support a claim that in this case, there was a level of deficiency so high that it went from negligent to reckless. Okay. I get that. Okay. That's fair. I understand that. Okay. Well, that's an important . . . I just don't think you can challenge the evidentiary rulings along the way for the district court to have gotten to the mistakes. If I made it seem that way, that's not the point. The point is that it doesn't . . . those inferences of mistakes in other cases, fine, but that does not equate to recklessness in this case when the only real argument supported by the record is that she saw seven minutia and other people have seen only five. Counsel, I think you should know, you do know, that there is no such thing as a due process claim based on an inadequate investigation. Why don't you move to the claim that you've got a . . . as I see it, a false arrest claim against both Berks and the officer that they lack probable cause for an arrest. Then you've got that count one and count two, and count three is a malicious prosecution case, which has all sorts of problems. It is very confusing, and I think you're alluding to your concurring opinion in the recent case last year, Harris, which we submitted, or Hanson, that we submitted to the court as supplemental authority. There is a distinction, of course, between the malicious prosecution claim, which is an initiation of legal process without probable cause . . . And we don't care about the rest at that point. Well, my point is that either way, whether you analyze this as malicious prosecution or false arrest . . . Then there's another problem that nobody wants to talk about in this case, but it's there, and that is one of causation. I'm talking about count three. Yes. You have an arrest and he's in custody. Now we're in a prosecution. There was a grand jury indictment sent to trial, and the question, obviously, is what is the effect on the bad investigation? What is the effect of the grand jury indictment in terms of causation? In Williams, the court said that it would be a damages issue, but it left open the question of whether or not an inadequate investigation or lack of probable cause on the front end prior to the grand jury indictment would be relevant. My point here is, either way, whether you examine it at the arrest . . . Probable cause prior to the indictment is the arrest, and it ends once . . . I agree, and there's ample probable cause, even if you took out the palm print identification, even if you took out the chef knife, where it originated from, which is a major point of contention from the plaintiff, whether it really came from the restaurant or not. If you took those two things out, that they've attacked so strongly, there's still ample probable cause, given the fact that Mr. Aguirre lied on the morning of the incident. He only admitted to being in there after being asked to see his shoes, because he knew they had blood on them. He had told his friend he didn't know whether he committed the murders, and the murder weapon is in his yard, and there's a bag of bloody clothes on the rooftop of his shed. Those things alone are easily probable cause, and they are for sure arguable probable cause. Notwithstanding all those other issues, it's a causation question as these issues cascade down the case. Our position is there's easily probable cause and arguable probable cause. Thank you. All right. You've saved your time for rebuttal, Mr. Poulton. Thank you. Mr. Massey. May it please the Court, Your Honor, Ken Massey on behalf of appellee and cross-appellant Mr. Clemente Aguirre. Can I tell you something? Hold the time for him a second. In the same way that I think Mr. Poulton has some appellate jurisdiction issues with some of the preliminary issues that he's raising, I think you've got some too. Your Honor. I want you to discuss those. I mean, you have a cross-appeal on all sorts of things in a qualified immunity appeal brought by the defendants, and although in certain cases we have the raw power to exercise pendant jurisdiction, this seems like a full-blown appeal of everything the district court ruled on if we take up your cross-appeal in all of its parameters. So I'd like you to address that at some point during your . . . Certainly, Your Honor. So on the cross-appeals, we think that the issues are part and parcel with all of the issues that the appellants have raised in their appeal. They all relate . . . For example, I'll give you one that I don't think is for sure, which is the Monell claim. It doesn't . . . The resolution of all the issues with regards to Ms. Burks, Mr. Hemmert, Ms. Grassi, those can all be resolved without doing municipal liability under Monell against the sheriff. Maybe I'm wrong about that, but it seems to me that those are completely distinct, because you require stuff over and above the constitutional violations by those individuals. You've got to show some sort of municipal practice, custom, et cetera, et cetera. Correct. So with respect to the Monell claim, which was count five of our complaint, we think that the legal error that the court made below was concerning the deliberate indifference element. And to answer your question as how this relates to the appellant's appeals, we think that if there had been proper training and proper procedures for law enforcement personnel on identifying mentally disturbed potential suspects in the course of a homicide investigation, all of the injuries that we've raised here would have been avoided, because they would have properly investigated Samantha Williams. And that's really the crux of our claim, is that this was an investigation which ignored numerous red flags regarding Samantha, completely honed in on Mr. Aguirre, and that caused his constitutional injuries. Okay. Now, to pick up on something that Judge Chouflat was discussing with Mr. Poulton, there are a number of circuit cases, I haven't found any in the Eleventh, one way or the other, but there are a number of circuit cases out there which hold, as a matter of law, that there is no constitutional right to an adequate investigation. You've got cases from the Ninth, the Sixth, and the Eighth, that say exactly that, that if you have an investigation that is shoddy or problematic in some way, that in and of itself can't be the basis for a constitutional claim under 1983. Tell me why you think those cases are mistaken. Well, we think that there was a clearly established right by the time that this investigation happened in 2004 to an adequate investigation. Clearly established right to what? To an adequate criminal investigation. What case establishes that proposition of law? The Tillman case, cited by the lower court's order, pursuant to that case, any reasonable officer by 2004 should have been aware of the IED diagnosis with respect to Samantha. What does Tillman hold? Tillman concerned the arrest of the wrong person. The criminal defendant was also named Tillman in that case, and they basically arrested the wrong Tillman. That's like Harris v. Ixson. Are you familiar with that case? Yes, Your Honor. Yes, that was raised by appellate supplementary briefing. We said no constitutional right to an adequate investigation. Well, in the case of Tillman, there was subjective reasons for the investigation to have gone differently. The officers did not act reasonably. They ignored deliberately or recklessly ignored evidence that could have been easily obtained, and that could have helped them identify the right Tillman to arrest. And similarly here, we've alleged that there was all this evidence, you know, staring the face right in front of the face of the appellants during this investigation. The morning that the body was found, Mark Vansant told Detective Hemmert that Samantha had been vapor acted, that she had an IED diagnosis, but despite that, there was a very minimal investigation in Samantha, and like I said, they laser focused on Mr. Tillman. Is it necessary that we agree with you that there's a constitutional right to an adequate investigation in order for you to prevail on count three? I'm sorry, Your Honor. If count three is a malicious prosecution, what I want to know is, is it your position that count three in part relies on an adequate investigation? Yes, I think that's a fair characterization. If there was not a constitutional right to adequate investigation, where is count three? I'm sorry, Your Honor. Let's assume there's no constitutional violation in the investigation of any kind. What effect does that have on count three? If there was no constitutional injury, then count three would be... If count three violated the Constitution in investigating... Yes, then count three would have been properly dismissed, but we obviously disagree with the premise of that question. So count three should have been dismissed, then, if that's so. If that's the case. And we understand that malicious prosecution is probably our most challenging claim, but we nevertheless think that when viewed holistically, there was a lack of probable cause in the affidavit for all of the reasons, the many reasons that the district... What do you do with the grand jury indictment? Your Honor, concerning the grand jury indictment, was your question regarding the causal chain? You can have a tort that occurs, constitutional violation, we'll say, in a false arrest, but there's a grand jury that comes in and indicts the defendant. What does that do to the behavior beforehand, the officer's behavior? What does that do to it? We don't think that the grand jury indictment severs liability or restricts the damages in the way that... I'm not talking about severing. I'm talking about causation. Yes. As far as causation is concerned, the damage has already been done. The damage has already been done by the inadequate investigation, so the injuries continue to flow even after the grand jury indictment, if I'm understanding... That would be a false arrest claim in which you can theoretically or potentially sue for damages or harm incurred from the moment of the arrest until there's a causal break like a grand jury indictment, but count three is not a false arrest claim. It's a malicious prosecution claim. Correct. It goes all the way through the end of the process until the proceedings against your client end. You're seeking damages for that entire period, including the amount of time that he spent in jail following his conviction. Right. The suggestion is that that sort of a claim has a causal cutoff when a grand jury decides to indict and finds probable cause to do so. That's the question that's to you. I believe the issue of law was addressed by the Bart's decision, which both appellants and I have raised in our briefing, and the specific statement in that case is that there is a cutoff unless the plaintiff could show that these intervening acts were the result of deception by the law enforcement personnel. It's our position that the deception that stems from the inadequate investigation... That's a functional equivalent of manhandling the jury. That line of argument is that the jury was overcome, so it was not a break, a state of causation. I'm sorry, Your Honor, could you rephrase the question? If you overcome, with unlawful conduct, the grand jury's process, then the guy who did that can't say the grand jury indictment eliminates the claim. We respectfully disagree, and we feel that the district court correctly found there was malicious prosecution based off of both the inadequate investigation and the misstatements and omissions in the arrest affidavit. Can you tell me, Mr. Ramasi, there are obviously things that went wrong in this investigation viewing the evidence as the light most favorable to your client, not following up on leads, not investigating certain things or the like. Having said that, why wasn't there probable cause to arrest your client given the circumstantial evidence? The bloody clothes, the knife, his misstatements to the police, the fact that his footprints were near one of the bloody bodies, I mean, evidence that he would go to the victim's house at night to get beer, when you put that all together, why isn't that enough for probable cause to believe that he had committed the murder? Your Honor, we don't think that's simply because he had been in the trailer before to have beers would have given any kind of probable cause to law enforcement, but we can see that there was other factors, some of which you mentioned. No, agreed. Any one of those things by themselves would probably not have given probable cause to  When you put them all together, the knife, the fingerprints on the knife, the bloody clothes, his nearby presence, the fact that he had been to their place other times, the footprint near one of the bodies, why isn't that all together enough for probable cause to arrest him? Because the law enforcement personnel should have also been aware of all this other exculpatory evidence which would have cut against some of the evidence that you just mentioned. Of course, there's the latent print report, which, as we've alleged in count one, was a fabricated identification. The appellants have taken issue with that term and, for example, with respect to their own expert, Glenn Langenberg, they disagree that when we say that he thought that Appellant Burks' identification was incorrect, but there's no doubt in my mind that there was not only the administrative review, but the appellant's own expert, which disagrees with the identification and the process he's taken by Appellant Burks. And so the point is, is that had the proper investigation been done and had proper evidence been obtained during the course of investigation, there would not have been probable cause to arrest Mr. Aguirre because they would have known all this other information. Notwithstanding the fact that there was, yes, his footprints and some of the other, the clothes that were thrown on the trailer top, things like that, we understand that there are some issues here. And again, like I understand that this is our most challenging claim, malicious prosecution, but we think if you viewed holistically the investigation as a whole, there would not have been probable cause at that time. Do you know of any cases that do that sort of probable cause analysis? They don't view the facts, they don't view just the evidence that the police had or figured out or obtained, but they also do a backwards looking review to see what other evidence might have been gleaned or learned if the police had done their job the proper way. What cases do that sort of a probable cause analysis? I believe the Kingsland case cited in the order comes probably the closest, and that was an automobile accident in which there was a law enforcement personnel involved in that accident. When the investigating personnel came onto the scene, they didn't interview the eventual plaintiff in the 1983 case. They only basically took the word of their fellow officer during the course of that investigation. So by ignoring everything that could have been gleaned from the other participant in that accident, they didn't conduct an adequate investigation. I think that probably comes the closest. With regards to Ms. Burks, tell me what evidence in the record supports the district court's view of what she did? I think there's a concession for appellate purposes that she may have behaved negligently. The district court thought it was an intention, that a jury could find intentional fabrication. Tell me what supports that, assuming we can get to that issue. Yes, Your Honor. So we think that in short, the administrative review put out by the FDLE in conjunction with the county is rife with evidence supporting the fact that the print identification was at least reckless, if not intentionally misidentified our client. I wanted to raise one point about the administrative review in that the appellant Burks has said that this constitutes hearsay evidence. We think that that argument has been waived. It wasn't brought up in the motion for summary judgment. There was only a brief mention of it in the reply brief. And even then, they didn't cite the federal rule of evidence regarding hearsay. So we think that it should be considered. And when it is considered, it's clear that Ms. Burks, at least there's evidence that Ms. Burks knew that Bill McKay, who was the person that she asked for the verification, was no longer competent to serve as a print examiner. And so she did not have this properly verified, which was a requirement according to the SWGFAS guidelines. And please don't ask me what that stands for. I don't remember at this point. But basically, the print identification, latent print identification guidelines. If Your Honor doesn't have any further questions, I just wanted to raise one other issue from our cross appeal. We think that our prison conditions expert, Mr. Ron McAndrew, was improperly excluded. We think that his 23 years as a warden and otherwise being employed by the state prison system would help contextualize the conditions that our convict might face, particularly for the 10 years he was on death row. That goes to damages. Yes. And we think that that's, I'm sorry. Why, why is that properly reviewable in a qualified immunity appeal by the defendants you are suing? We think that if that's the case, like I told Mr. Polson on his side, I mean, what's good for the goose is good for the proverbial gander. If you get to appeal that issue too, and he gets to appeal the other issues, a qualified immunity appeal becomes a full blown appeal of everything that happened at the district court at summary judgment. Everybody gets to appeal everything. Your Honor, we, we will happily stand down on a cross appeals if it means that there's no jurisdiction to cover the appellants appeals, but if they. No, no, no. I didn't say all of their appeals. I think, I think some of their claims we can't review. Like, I don't think we can review the district court's evidentiary rulings on evidence with regard to Ms. Burks. I also don't think we can review evidentiary rulings against you on your expert. That, that goes for both sides. It's not a one sided principle. I just think that there are, there are problems with some of the things that both sides are trying to raise in a qualified immunity appeal, but that's only my personal view. I understand your Honor. Uh, the only other point I wanted to make about our, our conditions expert is that, uh, it's been mischaracterized in the appellants briefs in saying that he's basing his opinion just on an interview with our client, but it's in fact based on much more. It's based on his, his review of the records and his body of, of work in the, in the prison system. So, uh, with that, I'd like to rest on my brief unless your Honors have any further questions. All right. Thank you very much, Mr. Massey. Okay, Mr. Bolton. Thank you, your Honor. Starting with the last point you made, even if you set aside and do not consider the evidentiary rulings by the district court regarding Ms. Burks, there is still the legal question of the effect that her palm print analysis has on probable cause. I agree with that. All right. And that is where we think the case ends because there's ample probable cause. There is certainly ample, arguable, probable cause to arrest Mr. Aguirre. I know, but isn't, but isn't there an independent constitutional right to not have a law enforcement officer present fabricated evidence? Yes, but you still have to satisfy the causation requirement. Uh, it has to be a material misrepresentation. It has to affect the outcome. And we can analyze that at two levels. We can analyze at the arrest level. We can analyze it at the conviction level. At the arrest level, we have all this other evidence of probable cause. I'm inviting you to take the palm print out of the arrest report altogether. All right. At the conviction level, Mr. Aguirre told the jury he handled the knife. He said the same thing in his deposition in this case. So where is the causation, even if you assume that the palm print identification meets the standard of being reckless? We, we obviously disagree, but even if you make that assumption, um, legally, it, it would not suffice to establish a, either malicious prosecution or false arrest. I want to point out something about Harris, um, that I think is particularly important with regard to counsel's arguments about not looking at Samantha closely enough, Samantha Williams. The court in that case held, as we had been arguing in our brief, but explicitly said it, you can't speculate about what other investigation might have yielded. Right? That's a never, you can't say, what if they'd gone to Van Zant's house? What might they have found? You can't say, and the, the, the standard announced in Harris is the evidence must be plainly, obviously, and irrefutably exonerated, right? So where is that? That, that is not here. The, the, the things that counsel's pointing to that, uh, Samantha Williams had a prior Baker act, or she had explosive personality disorder. None of those things irrefutably, plainly, and obviously excludes Clemente Aguirre. If you look at the, the, the summary judgment order, the court listed out some, not all, but some of the facts from the arrest affidavit or arrest report from, uh, Rob Hemmert, um, and you, your honors recounted those. I won't go over those again. And then listed things that might have implicated Samantha Williams. That's not the question. The question isn't whether she might have been a viable alternative suspect. The question is whether there was probable cause or in qualified community parlance, arguable, probable cause to have, um, arrested, uh, Mr.  Um, I would also point out your honors. We keep referring to count three as the, um, malicious prosecution claim. And count four is the inadequate investigation claim against Hemmert and Grossi. We haven't talked about Ms. Grossi, um, at all. Um, I would just point out that the only thing that really, uh, attaches to her is not sending out all the blood. You can't bring up a new issue on rebuttal. If you want to, you can. And I'm going to let Mr. Massey have sir rebuttal because it's not fair to him. He addresses what you address at your initial amount of time. So your honor, I think it's handled in the brief. So I'll just rely on that. Um, what I want to just conclude then with on this issue of inadequate investigation and whether there's a standalone constitutional right to an adequate investigation. I think under the case law, the, the inadequate investigation argument is an argument as to why there was a lack of probable cause. Not its own standalone constitutional right. So in this case, if you take out the things that they complain about, the tying of the knife to the restaurant, the palm print identification, uh, that's, uh, uh, discussed in Williams via Geary. You take those things out of the equation. What do you have left? And in this case, you have ample probable cause given all the other evidence, uh, that was present, uh, on the date of the investigation and then ensuing days. Did you raise the causation issue with regard to Ms. Burke's on the fabrication of evidence claim? Yes. I'm sorry. Did you raise the causation issue? Yes. Which you framed here as materiality in the district court at summary judgment in your qualified immunity papers? Yes. Both defendants argued that the, there was ample probable cause not withstanding the issue of the palm print identification. One of the, in fact, one of the points was, but the, the fabrication of evidence doesn't just go to probable cause for arrest. You understand that? I understand that. But in terms of it being, for example, if Mr. Hypothetical, cause we have to write an opinion and we have to try to write it carefully, if Mr. Aguirre had not testified at trial and admitted that he handled the knife and Ms. Burke's testified at trial that she examined the knife and found his fingerprint or his prints on his palm print on it, the fabrication of evidence claim goes not only to the arrest, but to the conviction as well. So you understand that probable cause that isn't the end all be all of the fabrication claim. I understand your honor. I'm over time. May I have leave to answer your question? Yes. Okay. First, Mr. Aguirre testified in this case that he always. I know, I know. I I'm asking you a hypothetical question to show that the fabrication claim, a fabrication claim is not always negated by a showing of probable cause. I cannot speculate as to how Mr. Aguirre would have or not have testified had the palm print identification not been made. I will tell you that the trial court, criminal trial court addressed this issue in its order, denying the motion for new trial and said, Mr. Aguirre would have had to testify any way to overcome all of the other evidence in the case, right? That it's, it is not reasonable to assume that had the palm print identification not been made, Mr. Aguirre would not have testified given all of the other incriminating evidence. That was the criminal trial court. Okay. Mr. Poulton. Thank you. Thank you as well. All right. That concludes our session here. We're in recess.